Joseph UPCHURCH and Sandra Upchurch, Appellants (Defendants Below),

v.

Earl W. HENDERSON and Debra Henderson.

No. 45A03–8605–CV–139.

Court of Appeals of Indiana, Third District.

March 23, 1987.

George Glendening, Hammond, for appellants.

Stephen R. Goot, Hammond, for appellees.

STATON, Judge.

This appeal is from a judgment against Joseph and Sandra Upchurch, vendors under a land sale contract, for wrongfully evicting Earl and Debra Henderson, the vendees. The Upchurches raise the following issues:

1. Is Sandra's liability to the Hendersons supported by sufficient evidence?

2. Is the award of $4,500 in compensatory damages supported by sufficient evidence?

3. Did the court err by refusing to admit a copy of the Hendersons' complaint into evidence, when the Upchurches' answer denied the complaint's allegations?

We affirm the judgment holding Sandra liable, and uphold the exclusion of the Hendersons' complaint; we remand the issue of damages to the trial court.

Earl and Debra Henderson entered into a land sale contract with Joseph and Sandra Upchurch for the purchase of a house. The contract required the Hendersons to pay $2,000 down and $200 per month for twelve years.

The relationship between the Upchurches and the Hendersons deteriorated after the Hendersons missed several contract payments. Approximately one year after the contract was formed, the Hendersons returned home one day to find their belongings piled outside the house. Many items had been damaged or lost.

The Hendersons sued the Upchurches for wrongful eviction. The jury found the Upchurches liable and awarded the Hendersons $4,500 compensatory damages and $500 punitive damages.[1]

I.

*Sandra's Liability*

First, the Upchurches challenge the jury's conclusion that Sandra was liable to the Hendersons. Thus, the Upchurches challenge the sufficiency of evidence to support the jury's finding that Joseph acted also for Sandra when he wrongfully evicted the Upchurches.[2]

When reviewing the sufficiency of evidence, this court will neither weigh the evidence nor judge the credibility of witnesses. We will consider the evidence most favorable to the judgment and all reasonable inferences which may be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, we must affirm. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 904.

The Upchurches point to the fact that Sandra did not help Joseph remove any of the Hendersons' furniture or other property from the house. Then, anticipating an agency argument, the Upchurches assert that "there is not a scintilla of evidence that Sandra Upchurch either authorized or ratified the acts of her husband, or was in any way his agent."[3] We disagree.

The question of the existence of an agency relationship is usually one of

---

1. The Upchurches have expressly waived any issue as to the punitive damage award.

2. The Upchurches do not challenge the jury's finding that the eviction was wrongful.

3. We assume the Upchurches refer to the question whether Joseph acted as Sandra's agent.

fact. *McCormick Piano and Organ Co., Inc. v. Geiger* (1980), Ind.App., 412 N.E.2d 842, 850. The fact of the marital relationship may properly be considered in determining the question of agency, and, when taken into consideration with other circumstances, may be entitled to considerable weight. *Id.* Indiana recognizes an agency relationship which is implied from the actions and circumstances of the parties. *Moehlenkamp v. Shatz* (1979), Ind.App., 396 N.E.2d 433, 436.

■ Here, the evidence reflects Sandra's extensive involvement in the contractual relationship between the Hendersons and the Upchurches. Sandra kept all the records and did all the bookkeeping. She collected the contract payments and issued the receipts. And, most important to our determination, she herself testified that, after Joe had evicted the Hendersons, she told Debra Henderson that *"we've repossessed the house."* (Our emphasis.)

Our affirmance of the judgment holding Sandra liable is dictated by our limited role in reviewing the jury's fact-finding process: if there is a reasonable inference that Joseph acted as Sandra's agent, then it is our duty to affirm even though there is also a reasonable inference that he did not. *Monumental Life Ins. Co. v. Franko* (1985), Ind.App., 486 N.E.2d 608, 610. In the present case, the inference is reasonable that Joseph acted as Sandra's agent when he evicted the Hendersons. Therefore, we must affirm the jury's conclusion that Sandra is liable.

## II.

### *Damages*

The Upchurches next challenge the jury's award of $4,500 in compensatory damages to the Hendersons.

■ In reviewing a challenge to a damage award, we will consider only the evidence favorable to the award. *Duchane v. Johnson* (1980), Ind.App., 400 N.E.2d 193, 197. To support an award for compensatory damages, facts must exist and be shown by the evidence which afford a legal basis for measuring the plaintiff's loss.

*Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275, 1288, *trans. den.* The damages must be ascertainable in a manner other than by mere speculation, conjecture, or surmise, and must be referenced to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances. *Id.*

Our Indiana Supreme Court addressed the issue of damages in a similar case. *Smeekens v. Bertrand* (1974), 262 Ind. 50, 311 N.E.2d 431. There, as here, the vendors under a land sale contract wrongfully ejected the vendees. When the vendees sued, the court held that the party seeking recision (the vendees) must restore or offer to restore everything of value received by them under the contract, including the reasonable rental value of the premises for the time they had possession. 311 N.E.2d at 436. Therefore, any damages sustained by the Hendersons must be offset by the value they received under the contract.

■ According to the evidence favorable to the award, the damages sustained by the Hendersons are as follows. First, the Hendersons are entitled to the return of their down payment of $2,000, and of the $1,600 in payments they made on the contract. *Smeekens.* Next, the Hendersons are entitled to compensation for improvements made by them. The evidence shows that the Hendersons expended $330 on such improvements. Finally, the Hendersons are entitled to compensation for damage to their property. While this amount is disputed, the evidence favorable to the award shows losses totalling $599. The subtotal of these damages, then, is $4,529, slightly more than the jury's award of $4,500.

■ However, the Upchurches are entitled to certain set-offs. As the *Smeekens* court noted:

The Smeekens [the vendors] have a right, *as a matter of law,* to set-off the reasonable rental value of the premises for the period of the Bertrand's possession against the total payments ... which must be returned by the Smeekens. Al-

lowing the Bertrands to recover these payments ... without a set-off for reasonable rental value would result in obvious unjust enrichment.

311 N.E.2d at 436. (Original emphasis.)

The only evidence regarding reasonable rental value of the property came from Joseph Upchurch, who testified that the rental value was $200 per month, the same amount the Hendersons had been paying on the contract. The Hendersons apparently were in possession for twelve months. Therefore, the Upchurches are entitled, as a matter of law, to a set-off of $2,400 for the reasonable rental value of their property. This would reduce the award to $2,129.

To make up for the $2,400 difference, the Hendersons argue that the jury must have awarded damages for certain items which were alleged to be lost or damaged, but for which no evidence of value was introduced. For example, Earl Henderson testified as follows:

We had some antique ceramics that Debbie had got from her ma from her grandmother, and other little things that was all thrown in one (1) box and mostly all of them was busted or had little men with their legs off and stuff like that.

Did you purchase any of those?

No, I did not.

They were all given to you?

Yes, unless my wife had bought a couple of them. I don't know.

Were you aware of their value?

Not too sure on the value of that kind of stuff.

Earl Henderson further testified:

Did you have a mirror from the kitchen?

Yes, we left a mirror. I forget the exact size of it. It was a pretty good-sized mirror that we put above the kitchen sink and it went right in between the cabinets just right and it looked pretty nice.

Did you buy it?

The wife got it from somewhere. I don't know if she bought it or if it was gave to her.

■ We must agree with the following observation by the Upchurches:

It was precisely on such matters that the jury must have reached their verdict, but it is respectfully suggested that there is no evidence in the record to support a valuation of such items.

As the record contains *no* evidence of value for any of these items, the award of damages for them must be based on mere conjecture, speculation, or surmise. Thus, the award cannot stand.[4]

### III.

### *Exclusion of the Hendersons' Complaint*

Finally, the Upchurches argue that the court erred in refusing to admit the Hendersons' complaint into evidence. The Upchurches offered the complaint as a judicial admission that the Hendersons paid only $1,080 on the contract, rather than the $1,600 reflected in the Hendersons' testimony.

■ The Upchurches concede the general rule that, where an adverse party denies an allegation in a pleading, such allegation cannot thereafter be used as an admission. *Indiana State Highway Comm'n v. Vanderbur* (1982), Ind.App., 432 N.E.2d 418, 422, *reh. den.* Here, the Upchurches denied the truth of the Hendersons' allegation that they had paid $1,080 on the contract. Thus, the Hendersons' allegation cannot now be used as an admission.

■ The Upchurches urge, however, that they had no choice but to deny the allegation that the Hendersons had paid $1,080, since the Upchurches' position was that the Hendersons had paid even less than that amount. A similar theory was presented in *Brown v. Grzeskowiak* (1951), 230 Ind. 110, 101 N.E.2d 639, *reh. den.*

---

4. Hendersons make other arguments involving property tax and insurance costs in their attempt to buttress the award. Even if they were correct that these items could be included in the award, the amounts of the items would fall far short of making up the difference of $2,129.

There, the defendant also asserted that she had no choice but to deny the allegation in question. The court stated:

> A party wishing to avail himself of an admission or averment in a pleading of the adverse party must accept it as an entirety. * * * He cannot split it up, accept part of it, and claim the benefit of the result. * * * Moreover, a party cannot take advantage of an admission in the pleading of his adversary where he has denied the truth of the allegation and joined issue upon it ... even though the denial be an indirect one.

101 N.E.2d at 645. Even if the Upchurches had pleaded an inability to admit or deny, the response would have placed the matter in issue as a denial. Indiana Rules of Procedure, Trial Rule 8(B); *Chase Manhattan Bank v. Lake Tire Co., Inc.* (1986), Ind.App., 496 N.E.2d 129, 132. The Upchurches do not persuade us that an exception to the general rule is appropriate here.[5]

To recapitulate, we affirm that portion of the judgment declaring Sandra Upchurch liable to the Hendersons. We uphold the court's refusal to admit the Hendersons' complaint into evidence. We remand the cause to the trial court for a determination of damages consistent with this opinion.

HOFFMAN, J., concurs.

GARRARD, P.J., concurs with opinion in which HOFFMAN, J., concurs.

GARRARD, Presiding Judge, concurring.

Under the circumstances here presented I concur with the majority. I write separately merely to underscore that our decision presents no departure from the traditional rule in Indiana that one spouse is not presumed to be the agent of the other. *See, e.g., Uland v. Nat'l. City Bank* (1983),

Ind.App., 447 N.E.2d 1124; *Downham v. Wagner* (1980), Ind.App., 408 N.E.2d 606.

---

5. We note that the parties presented extensive testimony regarding the total amount of contract payments. In fact, the Upchurches were able to question Debra Henderson as to whether she and Earl had paid only $1,080 on the contract. Thus, any possible error in refusing to admit the complaint was harmless.